KAYE, ROSE & PARTNERS, LLP
Bradley M. Rose, Esq. (126281)
brose@kayerose.com
Anita M. Eilert, Esq. (133639)
aeilert@kayerose.com
169 South Rodeo Drive
Beverly Hills, California 90212
Telephone: (310) 551-6555
Facsimile: (310) 277-1220

Attorneys for Defendant NCL (BAHAMAS) LTD.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| RAMON MOORE,<br><br>    Plaintiff,<br><br>    v.<br><br>NCL (BAHAMAS) LTD., which will do business in California as NCL (BAHAMAS) SERVICES, LTD., NCL AMERICA, INC., and DOES 1-10, inclusive,<br><br>    Defendant. | **Case No.:   2:18-cv-10090-JFW (SKx)**<br>**Trial Date: Not Set**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S AMENDED MOTION TO CONFIRM ARBITRATION AWARD**<br><br>Date: March 11, 2019<br>Time: 1:30 p.m.<br>Place: United States Courthouse, 350 W. 1st St., Los Angeles, CA 90012<br>Courtroom 7A<br>Judge:    Hon. John F. Walter |

# TABLE OF CONTENTS

**Page(s)**

I. PARTIES ................................................................................................. 1

II. FACTUAL AND PROCEDURAL BACKGROUND ............................. 1

III. JURISDICTION AND VENUE .............................................................. 5

IV. FINAL AWARD ..................................................................................... 5

V. AUTHORITY TO CONFIRM AWARD ................................................ 6

VI. PLAINTIFF'S ARGUMENTS TO VACATE THE AWARD LACK MERIT ..................................................................................................... 6

    A. ARBITRATOR ABRAHAM APPROPRIATELY DISCLOSED HIS PROFESSIONAL RELATIONSHIP WITH NCL ..................... 7

    B. PLAINTIFF WAIVED HIS RIGHT TO OBJECT TO ARBITRATOR ABRAHAM ............................................................... 9

    C. ARBITRATOR ABRAHAM'S PROFESSIONAL RELATIONSHIP WITH NCL, ALONE, DOES NOT ESTABLISH "EVIDENT PARTIALITY" ..................................... 10

VII. CONCLUSION ..................................................................................... 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AAOT Foreign Econ. Ass'n (VO) Technostroyexport v. Int'l Dev. & Trade Servs., Inc.*,
139 F.3d 980, 982 (2nd Cir. 1998) .................................................................. 9, 10

*Applied Indus. Materials Corp. v. Ovalar Makine Ticaret Ve Sanayi, A.S.*,
492 F.3d 132. 139 (2nd Cir. 2007) ............................................................... 11

*Carlini Enterprises, Inc. v. Paul Yaffe Design, Inc.*,
2016 WL 4374940 (C.D. Cal. 2016) ...................................................................... 12

*Commonwealth Coatings Corp. v. Continental Cas Co.*,
393 U.S. at 145, 151 (1968) ................................................................................ 11

*Cook Indus., Inc. v. C. Itoh & Co. (America) Inc.*,
449 F.2d 106, 107–08 (2nd Cir. 1971) ................................................................. 9

*Fidelity Federal Bank, FSB v. Durga Ma Corp.*,
386 F.3d 1306, 1313 (9th Cir. 2004) .................................................................... 9

*First Options of Chicago, Inc. v. Kaplan*,
514 U.S. 938, 942 (1995) ...................................................................................... 6

*Greenberg v. Painewebber, Inc.*,
15 F.3d 1085 (9th Cir. 1993) ............................................................................... 12

*Hall Street Associates, L.L.C. v. Mattel, Inc.*,
552 U.S. 576, 588, 128 S. Ct. 1396, 170 L. Ed. 2d 254 (2008) ............................. 7

*Ilios Shipping & Trading Corp. v. Am. Anthracite & Bituminous Coal Corp.*,
148 F.Supp. 698, 700 (S.D.N.Y. 1957) .................................................................. 9

*Lagstein v. Certain Underwriters at Lloyd's, London*,
607 F.3d 634, 645–46 (9th Cir. 2010) .................................................................. 10

*McCorpen v. Central Gulf Steamship*,
396 F. 2d 547 (5th Cir. 1968) ........................................................................ 13

*Omar v. Sea-Land Service, Inc.*,
813 F.2d 986, 909 (9th Cir. 1987) ................................................................. 12

*Oxford Health Plans LLC v. Sutter*,
569 U.S. 564, 568 (2013) .................................................................................. 6, 7

*Piller v. Schwimmer*,
135 A.D.3d 766, 22 N.Y.S.3d 572, 574 (2nd Cir. 2016) ........................................ 9

*Ramon Moore v. NCL (Bahamas), Ltd., et al.*,
LASC Case Number BC540490 .............................................................................. 1

Kaye, Rose & Partners LLP

*Scandinavian Reinsurance Co. Ltd. v. Saint Paul Fire and Marine Ins. Co.*
668 F.3d 60, 73 (2nd Cir. 2012) .................................................................................. 11

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
559 U.S. 662, 671 (2010) ............................................................................................ 6

*Three S Del., Inc. v. DataQuick Info. Sys., Inc.*,
492 F.3d 520, 530 (4th Cir.2007) .............................................................................. 10

*United States v. Int'l Bhd. of Teamsters*,
170 F.3d 136, 147 (2 Cir. 1999) ................................................................................ 10

*White v. Mayflower Transit, LLC*,
481 F. Supp.2d 1101, 1103 (C.D. Cal. 2007 ............................................................... 6

*Woods v. Saturn Dist. Corp.*,
78 F.3d 424, 427 (9th Cir. 1996) ........................................................................... 7, 10

*Wulfe v. Valero Refining Company-California*,
2017 WL 1396685 (9th Cir. 2017) .............................................................................. 7

**Other Authorities**

9 U.S.C. § 10(a)(2) ..................................................................................................... 10

28 U.S.C. §1331 .......................................................................................................... 5

9 U.S.C. § 10(a)(1) – (4) ............................................................................................. 6

9 U.S.C. § 203 ............................................................................................................. 5

9 U.S.C. § 207 ............................................................................................................. 6

9 U.S.C. §201 .............................................................................................................. 5

9 U.S.C. §9 .................................................................................................................. 5

Code of Ethics, Canon II ............................................................................................. 8

Code of Ethics, page 2 ................................................................................................ 8

ICDR Article 13 .......................................................................................................... 7

NCL (BAHAMAS) LTD., by and through its undersigned counsel, submits this Memorandum of Points and Authorities in Support of its Amended Motion for Order Confirming the November 5, 2018 Award for Arbitration ("Final Award").

## I.

## PARTIES

NCL (BAHAMAS) LTD. ("NCL") is a Bermuda company, doing business in California as NCL (BAHAMAS) Services Ltd. which maintains its principal place of business at 7665 Corporate Center Drive, Miami, Florida 33126.

Plaintiff RAMON MOORE ("plaintiff"), is an individual who resides in the County of Los Angeles, State of California.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

NCL hired plaintiff as an aerial gymnast aboard its NORWEGIAN JEWEL, a Bahamian flagged vessel ("Vessel"), pursuant to a Seafarers Employment Agreement ("Employment Agreement") signed by plaintiff on May 11, 2013. The Agreement contains an Arbitration provision which provides that any and all disputes arising out of plaintiff's employment with NCL, including "claims such as personal injuries, Jones Act claims, actions for maintenance and cure, unseaworthiness, wages, or otherwise … shall be resolved exclusively by final and binding arbitration pursuant to the United Nations Convention on Recognition and Enforcement of Foreign Arbitral Awards (New York 1958) ("The New York Convention")." (Rose Decl. ¶2 and Ex. A.)

On or about May 27, 2013, plaintiff allegedly sustained personal injuries while employed within the course and scope of his employment aboard the Vessel. On March 26, 2014, plaintiff filed a Seafarer's Complaint [28 U.S.C. §1916], entitled *Ramon Moore v. NCL (Bahamas), Ltd., et al.,* LASC Case Number BC540490, alleging causes of action against NCL for: (1) Jones Act Negligence; (2) Unseaworthiness; and (3) Willful Failure to Pay Maintenance & Cure and for

Unearned Wages and sought damages for alleged personal injuries, lost wages, punitive damages and attorneys' fees and costs arising from the alleged incident.

On December 3, 2014, plaintiff voluntarily dismissed the Complaint in order to submit the matter to binding Arbitration in accordance with the arbitration provision set forth in the Employment Agreement between plaintiff and NCL.

On September 29, 2016, plaintiff filed a second Seafarer's Complaint [28 U.S.C. §1916], entitled *Ramon Moore v. NCL (Bahamas), Ltd., et al.,* LASC Case Number BC635662.  This Complaint arises out of the same May 27, 2013 incident and alleges the same three causes of action against NCL.

On December 13, 2016, NCL filed a Notice of Petition and Petition to Compel Arbitration in the Los Angeles Superior Court ("LASC") proceeding. (Rose Decl. ¶4.)  On May 16, 2017, the LASC granted NCL's Motion to Compel Arbitration and stayed the state court action pending completion of the Arbitration. The arbitration was to be conducted per the New York Convention and the rules of the International Centre for Dispute Resolution. ("ICDR").  (Rose Decl. ¶4.)

On January 12, 2017, the ICDR sent a letter to counsel acknowledging that the list of potential arbitrators previously provided had resulted in no matches to the selection of a suitable arbitrator.  (Rose Decl. ¶5 and Ex. B.)  On January 17, 2017, the ICDR forwarded the resumes of three additional arbitrators, one of whom was Peter Abraham.  (Rose Decl. ¶6 and Ex. C.)  When discussing the three new potential arbitrators with plaintiff's counsel, plaintiff was advised that the Kaye, Rose & Partners ("Kaye, Rose) law firm had never before mediated/arbitrated a case with Arbitrator Abraham.  (Eilert Decl. ¶3.)  On February 2, 2017, counsel for NCL informed the ICDR that plaintiff and NCL had reached an agreement to use Peter Abraham as arbitrator.  (Rose Decl. ¶7; Ex. D.)

On February 7, 2017, Arbitrator Abraham provided plaintiff and NCL with his required disclosures.  As part of his disclosures, Arbitrator Abraham checked the box "yes" to the following 2 of 14 disclosure questions: (4) Have you had a

professional or social relationship with *any parties or witnesses identified to date in this proceeding* or the entities for which they work?; and (9) Have *any of the party representatives, law firms or parties appeared before you in past arbitration cases?* (Rose Decl. ¶8 and Ex. E, emphasis added.) For checked boxes, Arbitrator Abraham was requested to "describe the nature of the potential conflict(s)." In response, he made the following additional disclosures: *"I answered "yes" to Number 4, as I have mediated and arbitrated several crew-member, and cruise line passenger cases, over the years;"* and *"I answered "yes" to Number 9, as I have served (and I am currently serving) as an Arbitrator (all ICDR cases) in several crew-member cases."* (Rose Decl. ¶8 and Ex. E.)

Pursuant to ICDR rules, the parties had until February 22, 2017 to either inquire further regarding Arbitrator Abraham's disclosures or object to his appointment. (Rose Decl. ¶9.) On February 23, 2017, the ICDR notified the parties that it had not received any further inquiries or objections to the appointment of Arbitrator Abraham. (Rose Decl. ¶10 and Ex. F.)

On March 1, 2017, during the telephonic initial Preliminary Hearing with counsel, Arbitrator Abraham introduced himself and advised all counsel that he was familiar with Jones Act cases. (Eilert Decl. ¶4.) He further stated, consistent with his written disclosures, that he had had prior NCL cases and had some ongoing cases with NCL. (Eilert Decl. ¶5.) Plaintiff did not voice any opposition to Arbitrator Abraham's appointment at that time. (Ibid.) Nor did plaintiff voice any objection on May 14, 2018, the first morning of the instant arbitration, when Arbitrator Abraham mentioned he was familiar with NCL's representative, Brett Berman, from prior arbitration proceedings involving NCL. (Eilert Decl. ¶6.)

The Arbitration was held on May 14-16, 2018 in Los Angeles, California before Arbitrator Abraham (ICDR Case Number 01-16-0004-0018). The arbitration lasted three full days and included the testimony of plaintiff, two lay witnesses by deposition, four medical witnesses, one medical witness by

deposition, two liability expert witnesses, two economists and in excess of 3,000 pages of exhibits. Thereafter, Arbitrator Abraham ordered the parties to submit post-arbitration briefs citing the law and evidence presented at arbitration supporting their claims with citations to the arbitration transcript. (Rose Decl. ¶11.)

On November 5, 2018, the ICDR notified the parties of Arbitrator Abraham's Final Award. (Rose Decl. ¶12 and Ex. G.) The 88 paragraph, 11-page Final Award provided a carefully detailed and well-reasoned analysis addressing each of plaintiff's claims, the law and the evidence presented, as well as his specific reasons for denying each of plaintiff's claims for monetary damages. (Ibid.)

On November 8, 2018, plaintiff emailed the ICDR requesting the Final Award be set aside and a new Arbitrator appointed based on his belated claim that Arbitrator Abraham had purportedly failed to disclose that he had mediated/ arbitrated other matters involving NCL in the past and had taken on other cases involving NCL after his appointment in this matter. (Rose Decl. ¶13 and Ex. H.)

After receiving additional correspondence from NCL and plaintiff, the ICDR advised that, after careful consideration of the comments, it had no jurisdiction to address plaintiff's post-arbitration award challenge to Arbitrator Abraham's impartiality and independence. The ICDR also determined it had no jurisdiction to appoint a new Arbitrator. (Rose Decl. ¶14-17 and Exs. G, H, I, J, K, and L.)

On December 4, 2018, NCL filed a Notice of Removal. [Docket No. 1.] On January 7, 2019, NCL filed a Motion to Confirm the Final Award. [Docket 14.] Plaintiff opposed the Motion to Confirm [Docket 20] and filed a Motion to Remand. [Docket 14.] On January 29, 2019, this Court denied plaintiff's Motion to Remand [Docket 37] and denied, without prejudice, NCL's Motion to Confirm, ruling that the parties had not complied with the meet and confer requirements contained in this Court's Standing Order and Local Rule 7-3. [Docket 36.]

On February 4, 2019, plaintiff filed a Motion to Vacate the Final Award. [Docket 46.] After meeting and conferring with plaintiff pursuant to Local Rule 7-

Kaye, Rose & Partners LLP

1 3 and this Court's Standing Order, NCL brings this Motion to Confirm the Final

2 Award. (See, Joint Statement on Amended Motion to Confirm, [Docket 48.]

### III.

### JURISDICTION AND VENUE

This court has jurisdiction over this proceeding pursuant to 28 U.S.C. §1331 and The New York Convention. (9 U.S.C. §201 *et seq*.) This is an action to confirm an international arbitral award under The New York Convention, a treaty and law of the United States (codified at 9 U.S.C. §§ 201–208), and thus presents a federal question (9 U.S.C. § 203).

Venue is proper in this Court pursuant to 28 U.S.C. §1331; because plaintiff resides in Los Angeles County, within this judicial district; and because the Final Award was rendered in Los Angeles, California. (*See*, 9 U.S.C. §9.)

### IV.

### FINAL AWARD

In the Final Award, Arbitrator Abraham awarded as follows:

A. Claimant's (RAMON MOORE) claim for damages is denied.

B. Respondent's (NCL) counterclaim for damages is denied.

C. The parties shall bear their own attorney's fees and costs incurred.

D. The administrative fees of the ICDR totaling US $7,720.00 shall be borne by Respondent as incurred, and the compensation of the Arbitrator totaling US $24,665.59 shall be borne by the Respondent as incurred.

E. This Final Award is in full settlement of all claims submitted to this Arbitration. All claims not specifically ruled on in this Final Award are denied. (Rose Decl. ¶12 and Ex. G.)

///
///
///
///

# V.

## AUTHORITY TO CONFIRM AWARD

Pursuant to the New York Convention, a party may petition any court having jurisdiction to confirm a foreign arbitral award "[w]ithin three years after an arbitral award … is made.". (9 U.S.C. § 207.) The court shall confirm the award unless it finds a ground for refusal or deferral of recognition or enforcement of the award specified in the said Convention exists. (Ibid.) There is a strong federal policy favoring arbitrations, and arbitration awards are subject to review only on a very limited basis. *(White v. Mayflower Transit, LLC,* 481 F. Supp.2d 1101, 1103 (C.D. Cal. 2007.) The limited grounds for a Court to refuse to confirm an award are:

(1) where the award was procured by corruption, fraud, or undue means;

(2) where there was evident partiality or corruption in the arbitrators …;

(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4) where the arbitrators exceeded their powers….

(9 U.S.C. § 10(a)(1) – (4).)

NCL submits that the Final Award is valid, binding and enforceable; and no grounds exist to refuse to confirm the Final Award.

# VI.

## PLAINTIFF'S ARGUMENTS TO VACATE THE AWARD LACK MERIT

The party opposing the confirmation of arbitration award "must clear a high hurdle." (*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 671 (2010).) Courts may vacate an arbitrator's decision "only in very unusual circumstances." (*Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 568 (2013) quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 942 (1995).) Such limited judicial review is necessary to "maintain arbitration's essential virtue of resolving

Kaye, Rose & Partners LLP

disputes straightaway." (<u>Hall Street Associates, L.L.C. v. Mattel, Inc.</u>, 552 U.S. 576, 588, 128 S. Ct. 1396, 170 L. Ed. 2d 254 (2008).) "If parties could take full-bore legal and evidentiary appeals, arbitration would become merely a prelude to a more cumbersome and time-consuming judicial review process." <u>Wulfe v. Valero Refining Company-California</u>, 2017 WL 1396685 (9th Cir. 2017) citing <u>Oxford Health Plans,</u> supra, at 568 (quotations and citation omitted).)

Here, plaintiff seeks to vacate the Final Award by alleging "evident partiality" on the part of Arbitrator Abraham. (<u>Section 10(a)(2)</u>. As the party challenging the Final Award, plaintiff has the burden of establishing facts sufficient to show evident partiality. (<u>Woods v. Saturn Distribution Corp.</u>, 78 F.3d 424, 427 (9th Cir.1996) ["Where the integrity of the arbitrator's decision is directly at issue. . . the party challenging the arbitration award must establish actual bias."].)

It is understandable that plaintiff is dismayed by the adverse Final Award, regrets his decision to accept Arbitrator Abraham's appointment, and as evident here, will assert any argument possible to dissuade the Court from confirming the Final Award. However, NCL submits that plaintiff's claims of partiality lack merit and that: (A) Arbitrator Abraham appropriately disclosed his professional relationship with NCL; (B) plaintiff waived his right to object to Arbitrator Abraham; and (C) Arbitrator Abraham's appointment in other matters involving NCL, alone, does not establish the requisite "evident partiality."

### A. **ARBITRATOR ABRAHAM APPROPRIATELY DISCLOSED HIS PROFESSIONAL RELATIONSHIP WITH NCL**

Article 13 of the ICDR Rules requires arbitrators to sign a Notice of Appointment affirming that he/she is "impartial and independent" and requires the disclosure of "any circumstances that may give rise to justifiable doubts as to the arbitrator's impartiality or independence." (<u>ICDR Article 13.</u>) The "Code of Ethics for Arbitrators in Commercial Disputes" requires arbitrators to make "pre-appointment disclosures of any facts which might affect their neutrality,

independence, or impartiality." (Code of Ethics, page 2.) Canon II of the Code of Ethics requires an arbitrator disclose "any known existing or past financial, business, professional or personal relationships which might reasonably affect impartiality or lack of independence in the eyes of any of the parties." (Code of Ethics, Canon II.) As an example, it states an arbitrator "should disclose any such relationships which they personally have with any party or its lawyer, with any co-arbitrator, or with any individual whom they have been told will be a witness." (Id.)

NCL submits that Arbitrator Abraham's disclosures complied with all disclosure requirements. He disclosed that he had a "past or present relationship" with "the parties, their counsel, or potential witnesses" and that he had "mediated and arbitrated several crew-member, and cruise line passenger cases, over the years." (Rose Decl. ¶8 and Ex. E.)

Because this is a two-party case between plaintiff and NCL, Arbitrator Abraham's disclosures clearly indicated that he had a past or present relationship with plaintiff, NCL or their counsel. Because plaintiff and his counsel had no past relationship with Arbitrator Abraham, and plaintiff had been advised that the Kaye, Rose firm had no past relationship with Arbitrator Abraham, the only other logical conclusion was that Arbitrator Abraham had mediated and arbitrated several crewmember cases and was "currently serving" as an arbitrator in several cases involving NCL.

Moreover, as detailed in the Declaration of Anita M. Eilert, Arbitrator Abraham verbally advised all counsel during the initial telephonic Preliminary Hearing that he was familiar with Jones Act cases and had presided over and was currently presiding over other NCL cases. (Eilert Decl. ¶4-5.) Plaintiff did not voice any opposition to Arbitrator Abraham's appointment at that time and did not request any further information. (Eilert Decl. ¶5.) On the first morning of the arbitration, Arbitrator Abraham, again, disclosed that he was familiar with NCL representative, Brett Berman. (Eilert Decl. ¶6.) Again, plaintiff sat quietly. (Ibid.)

Kaye, Rose & Partners LLP

Based on the forgoing, any claim by plaintiff that he was purportedly "unaware" that Arbitrator Abraham had involvement in any other cases involving NCL is disingenuous and strains credulity.

## B. PLAINTIFF WAIVED HIS RIGHT TO OBJECT TO ARBITRATOR ABRAHAM

In *Fidelity Federal Bank, FSB v. Durga Ma Corp.*, 386 F.3d 1306, 1313 (9th Cir. 2004), the Ninth Circuit considered the question:

> Whether a party with constructive knowledge of potential partiality of an arbitrator waives its right to challenge an arbitration award based on evident partiality ... if [the party] fails to object to the arbitrator's appointment or his failure to make disclosures until *after* an award is issued.

(*Id*. (emphasis added).)

In *Fidelity*, the court held that the waiver doctrine applied to a party who "fails to timely object." (*Id.* citing *Piller v. Schwimmer*, 135 A.D.3d 766, 22 N.Y.S.3d 572, 574 (2nd Cir. 2016) "Where a party has knowledge of facts possibly indicating bias or partiality on the part of an arbitrator he cannot remain silent and later object to the award of the arbitrators on that ground. His silence constitutes a waiver of the objection." (*AAOT Foreign Econ. Ass'n (VO) Technostroyexport v. Int'l Dev. & Trade Servs., Inc.*, 139 F.3d 980, 982 (2nd Cir. 1998); see also, e.g., *Cook Indus., Inc. v. C. Itoh & Co. (America) Inc.*, 449 F.2d 106, 107–08 (2nd Cir. 1971) ["Appellant cannot remain silent, raising no objection during the course of the arbitration proceeding, and when an award adverse to him has been handed down complain of a situation of which he had knowledge from the first."]; *Ilios Shipping & Trading Corp. v. Am. Anthracite & Bituminous Coal Corp.*, 148 F.Supp. 698, 700 (S.D.N.Y. 1957) [applying the waiver doctrine where a party "knew before the arbitration" that the other party was associated with one of the arbitrators and "could have inquired concerning the business relationship of [the

Kaye, Rose & Partners LLP

arbitrator] to any party interested in the arbitration."].)

Here, Arbitrator Abraham made verbal and written disclosures regarding his past and ongoing relationship with NCL. Therefore, plaintiff was on actual notice, or at a minimum, constructive notice, of Arbitrator Abraham's appointment in other cases involving NCL. Plaintiff could have inquired further into Arbitrator Abraham's relationship with NCL, Arbitrator Abraham's involvement in the "several cruise line passenger cases," or to object to his appointment altogether. Instead, plaintiff chose to sit quietly. He had knowledge of the facts that he now claims indicate bias or partiality on the part of Arbitrator Abraham yet remained silent. Plaintiff cannot now object to the adverse Final Award on the ground of partiality, as "[h]is silence constitutes a waiver." (See, *AAOT*, supra.)

### C. ARBITRATOR ABRAHAM'S PROFESSIONAL RELATIONSHIP WITH NCL, ALONE, DOES NOT ESTABLISH "EVIDENT PARTIALITY"

Vacatur is only appropriate where it is "evident" that an arbitrator was partial to one of the litigating parties. (9 U.S.C. § 10(a)(2). To show "evident partiality," the party moving to vacate "must establish specific facts indicating actual bias toward or against a party or show that [the Arbitrator] failed to disclose to the parties information that creates a reasonable impression of bias." (*Lagstein v. Certain Underwriters at Lloyd's, London*, 607 F.3d 634, 645–46 (9th Cir. 2010).) Where the integrity of the arbitrator's decision is directly at issue, the party moving to vacate must show "actual bias" as the "appearance of impropriety, standing alone, is insufficient to establish evident partiality. (*Woods v. Saturn Dist. Corp.*, 78 F.3d 424, 427 (9th Cir. 1996).) A showing of evident partiality "may not be based simply on speculation." (*United States v. Int'l Bhd. of Teamsters*, 170 F.3d 136, 147 (2 Cir. 1999); *see also Three S Del., Inc. v. DataQuick Info. Sys., Inc.,* 492 F.3d 520, 530 (4th Cir.2007) [noting that the "asserted bias" may not be "remote, uncertain or speculative."].)

///

The alleged non-disclosure of past or simultaneous appointments in other matters does not by itself constitute evident partiality. (*Scandinavian Reinsurance Co. Ltd. v. Saint Paul Fire and Marine Ins. Co.* 668 F.3d 60, 73 (2nd Cir. 2012) ["failure by two of three members of an arbitration panel to disclose that they were simultaneously serving as panel members of another arbitration involving similar issues, related parties, and a common expert witness does not support disqualification."].) "Nondisclosure does not by itself constitute evident partiality." (*Id.*)

There is no rule or legal support for the proposition that an arbitrator must disclose each and every case where he/she has been appointed as an arbitrator involving a particular party.

> The FAA does not bestow on a party the right to receive information about every matter that it might consider important or useful in presenting its case. A party is not entitled to the 'complete and unexpurgated business biograph[ies]' of the arbitrators whom the parties have selected.

(*Id.* citing *Applied Indus. Materials Corp. v. Ovalar Makine Ticaret Ve Sanayi, A.S.,* 492 F.3d 132. 139 (2nd Cir. 2007) quoting *Commonwealth Coatings Corp. v. Continental Cas Co.,* 393 U.S. at 145, 151 (1968) (White, *J.,* concurring).)

Immediately upon receipt of the adverse Final Award, plaintiff questioned the partiality of Arbitrator Abraham. (Rose Decl. ¶13 and Ex. H). Plaintiff now claims that Arbitrator Abraham failed to disclose his past or simultaneous appointments in other ICDR cases involving NCL and is therefore partial to NCL. However, plaintiff can submit no competent evidence supporting his novel proposition which belies both Arbitrator Abraham's written and verbal disclosures.

The fact is that plaintiff chose to ignore Arbitrator Abraham's disclosure that he had prior and ongoing arbitrations involving NCL. Even if plaintiff's assertions that Arbitrator Abraham had failed to disclose his appointment in several other

matters involving NCL were true, without more, it cannot, as a matter of law, constitute evident partiality. It is unknown how many of the alleged seven cases were settled, were decided in favor of NCL or were decided in favor of the crewmember.[1]

Plaintiff relies on the adverse Final Award as evidence of bias on the part of Arbitrator Abraham. However, "substantive conclusions in an arbitration award are insufficient to demonstrate evident partiality." (*Carlini Enterprises, Inc. v. Paul Yaffe Design, Inc.*, 2016 WL 4374940 (C.D. Cal. 2016); citing *Greenberg v. Painewebber, Inc.*, 15 F.3d 1085 (9th Cir. 1993).) In actuality, Arbitrator Abraham's 88 paragraph, 11-page Final Award provided a carefully detailed and well-reasoned analysis addressing each of plaintiff's claims, the law and the evidence presented, as well as his specific reasons for denying each of plaintiff's claims, none of which had to do with actual or perceived partiality. For example, Arbitrator Abraham made the following *inter alia,* significant findings based upon the evidence presented;

- Claimant's medical treatment has been extensive, and the resulting medical records are voluminous, but the vast majority of his care since disembarking from the *Norwegian Jewel* can be best described as excessive, palliative, unnecessary, redundant, experimental, entirely unrelated to the subject accident, or related to a pre-existing condition (depression) which was not disclosed by the Claimant on his pre-employment Medical Certificate…. (Exhibit G at ¶22.)

- Non-disclosure or willful concealment of a material medical condition constitutes a complete defense to non-payment of maintenance and cure. *Omar v. Sea-Land Service, Inc.*, 813 F.2d 986, 909 (9th Cir. 1987), and

---

[1] A "google" search of "NCL and Abraham arbitration" reveals that Arbitrator Abraham rendered a final award of over $3.3 million against NCL and in favor of an injured crewmember in June 2018. (Rose Decl. ¶19.)

Kaye, Rose & Partners LLP

*McCorpen v. Central Gulf Steamship,* 396 F. 2d 547 (5th Cir. 1968). (Exhibit G at ¶23.)

- As a result [of claimant's non-disclosure of a pre-existing condition] NCL was deprived of the opportunity to assess Claimant's suitability for employment. (Exhibit G at ¶26.)

- The question thus becomes foreseeability, and despite the best efforts of Claimant's counsel, no competent evidence or testimony was presented to establish to the satisfaction of this tribunal that the confluence of events leading up to the hoist slippage and stoppage had occurred prior to the date of Claimant's accident. (Exhibit G at ¶47.)

- There was no equipment malfunction or operational negligence on the *Norwegian Jewel* that caused Claimant's fall, but rather an unforeseeable confluence of events that led up to the momentary slippage of the hoist. (Exhibit G at ¶58.)

- As to past maintenance, the record is devoid of any evidence that Claimant ever requested, or established by competent proof of his need for, additional maintenance. (Exhibit G at ¶70.)

- In the absence of any evidence that Claimant was receiving curative medical treatment, NCL had no obligation to pay maintenance. (Exhibit G at ¶76.)

- The fact that a seaman continues to be disabled and/or continues to receive palliative treatment is irrelevant to the seaman's right to maintenance and cure, if the seaman is at MMI. *Farrell v. United States,* 335 U.S. 511, 1949 AMC 613 (1949). (Exhibit G at ¶78.)

- The vast majority of those bills were incurred with either out-of-network doctors providing purely redundant and/or unnecessary palliative care or with mental health providers for a pre-existing but undisclosed condition (i.e., depression). (Exhibit G at ¶82.)

- All unearned wages have been paid in full and thus that claim is no longer

Kaye, Rose & Partners LLP

ripe for consideration by this Tribunal. (Exhibit G at ¶84.)

Moreover, during the arbitration proceedings, Arbitrator Abraham made numerous and significant rulings against NCL: i.e., he denied NCL's motion to dismiss based on statute of limitation grounds despite plaintiff's failure to file in the proper forum within three years of the incident; he denied NCL's Motion on Enforceability of Choice of Law Clauses, and he also denied NCL's counterclaim for attorney's fees and costs. The Final Award is replete with the arbitrator's findings and justifications supporting his decision to deny plaintiff's claims on numerous grounds other than bias. (Rose Decl. ¶18.)

Finally, it should be noted that the underlying arbitration was administered under the rules of the ICDR. Arbitrator Abraham was appointed under Article 12(6) of the ICDR Rules and he acknowledged his retention in his Notice of Appointment. Arbitrator Abraham complied with his requirement to disclose "any circumstances that may give rise to justifiable doubts as to the Arbitrator's impartiality or independence." Thus, the role of the arbitrator is deemed impartial until competent admissible evidence is proffered to prove otherwise. The mere fact that Arbitrator Abraham has arbitrated other maritime cases with NCL and the maritime plaintiff's bar in Miami, does not establish a reasonable impression of partiality or evident bias. (Rose Decl. ¶20.)

Because plaintiff cannot meet his burden of proof establishing a valid basis for the Court to vacate, modify or correct the order, the Court must grant NCL's request for an order confirming the Final Award.

## VII.

## CONCLUSION

Based on the foregoing, and in conformance with the strong public policy favoring confirmation of foreign arbitration awards, NCL (BAHAMAS) LTD. respectfully requests this Court recognize the Final Award, and issue an Order

/ / /

Confirming the Final Award and entering judgment according thereto.  A [Proposed] Order Confirming the Final Award is filed herewith.

Dated: February 8, 2019                **KAYE, ROSE & PARTNERS, LLP**


By: /s/ Anita M. Eilert
Bradley M. Rose
Anita M. Eilert
Attorneys for Defendant NCL (BAHAMAS) LTD.